**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GOVERNMENT ACCOUNTABILITY PROJECT, *et al.*,

Plaintiffs,

v.

UNITED STATES OFFICE OF PERSONNEL MANGEMENT, *et al.*,

Defendants.

Civil Action No. 1:25-cv-00347-PLF

PLAINTIFFS' MOTION FOR LEAVE
TO IDENTIFY PLAINTIFFS' DECLARANTS BY PSEUDONYM

## INTRODUCTION

Plaintiffs respectfully move this Court for an order allowing seven nonparty declarants, who are submitting declarations in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss, to proceed under pseudonym in this action (and for Plaintiffs to rely on those declarations as attached to this motion in support of their Opposition to Defendants' Motion to Dismiss). Pursuant to Local Civil Rule 7(m), Plaintiffs' counsel has conferred with Defendants' counsel about this motion and Defendants have indicated that they oppose this motion.

Plaintiffs challenge Schedule Policy/Career ("Schedule P/C"), a sweeping change to the federal civil service that redesignates career civil service positions into a new at-will excepted service schedule that strips such positions of their congressionally mandated employment protections under the Civil Service Reform Act ("CSRA"). Schedule P/C is part of the administration's ongoing and carefully orchestrated pattern of targeting perceived opponents of its legal and political agenda, seeking to purge the federal workforce of those who do not share President Trump's political views. As part of this effort, the Trump administration has fired Inspectors General; terminated career criminal prosecutors for investigating crimes adverse to President Trump's interests; terminated, transferred, and placed on leave career employees whose jobs involve carrying out policies that President Trump disfavors; fired workers who voice opinions on matters of public concern, and more. Am. Compl. ¶ 10.[1]

Plaintiff National Active and Retired Federal Employees Association ("NARFE") is a membership organization, and seven of its members (the "Impacted Members") seek to submit declarations in support of NARFE's associational standing, attached hereto as Exhibits A-G.[2] These Impacted Members are neither plaintiffs in, nor parties to, this lawsuit. All are current career federal employees who have been moved to Schedule P/C and stripped of their CSRA protections without notice or an opportunity to contest the redesignation of their positions. Their declarations

---

[1] "Am. Compl." refers to Plaintiffs' Amended Complaint, ECF No. 37.

[2] Counsel hereby certifies that they have an unaltered signed copy of each declaration available for inspection by the Court.

describe their experience of being moved into Schedule P/C and the impact it has had on their personal and professional lives. *See* Exhibits A-G.

The Impacted Members wish to proceed pseudonymously because they fear that revealing their identities will place them at risk of retaliation by their employer, the federal government. Because the Impacted Members offer their declarations in support of litigation challenging Schedule P/C, they have an eminently reasonable fear that filing declarations under their given names could result in retaliation, including termination. Indeed, the Impacted Members are particularly vulnerable because the very act challenged here, Schedule P/C, strips them of their federal workplace protections and leaves them without clear recourse against such retaliation. As the Impacted Members are not parties to the lawsuit, Defendants are not prejudiced by their anonymity, and Plaintiffs respectfully request that the Court grant them permission to proceed in this action under the pseudonyms "Impacted Member 1," "Impacted Member 2," "Impacted Member 3," "Impacted Member 4," "Impacted Member 5," "Impacted Member 6," and "Impacted Member 7."

## LEGAL STANDARD

This motion does not involve a party seeking to litigate pseudonymously. Whereas pseudonymous requests by parties are disfavored because "[t]he people have a right to know who is using their courts," *In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020) (citation omitted), granting anonymity to a non-party declarant would not deprive the public of that right and therefore does not implicate the same concern. *See Doe v. Mass. Inst. of Tech.,* 46 F.4th 61, 71 (1st Cir. 2022) (holding that anonymity is "ordinarily" warranted for "innocent non-parties").

Plaintiffs, however, could meet even the higher standard applicable to parties in demonstrating the appropriateness of permitting the Impacted Members to proceed pseudonymously. District courts have broad discretion to permit the submission of materials by anonymous plaintiffs where the court determines that "'the impact of the plaintiff's anonymity' outweighs 'the public interest in open proceedings and on fairness to the defendant.'" *John Doe Co. v. Consumer Fin. Prot. Bureau*, 321 F.R.D. 31, 33 (D.D.C. 2017) (quoting *Nat'l Ass'n of Waterfront Emps. v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008)).

Courts typically consider five factors to "balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure[,]" including:

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature;
>
> [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;
>
> [3] the ages of the persons whose privacy interests are sought to be protected;
>
> [4] whether the action is against a governmental or private party; and, relatedly,
>
> [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*In Re Sealed Case,* 971 F.3d at 326-27 (quoting *In re Sealed Case*, 931 F.3d 92, 97 (D.C. Cir. 2019).

These factors are "non-exhaustive," and courts have frequently allowed plaintiffs and declarants to proceed without revealing their identities to defendants where there is a particularly high risk of retaliation or harassment. *See, e.g.*, *New Mexico v. Musk*, 824 F. Supp. 3d 80, 95-96 (D.D.C. 2026) (granting leave to file five standing declarations under pseudonyms); *League of Women Voters v. DHS*, 2025 WL 2897654, at *2 (D.D.C. Oct. 10, 2025) (granting individual plaintiffs right to proceed under pseudonym); *Does 1-2 v. OPM*, 763 F. Supp. 3d 58, 61-62 (D.D.C. 2025) (granting leave for career federal employee plaintiffs to file under pseudonym); Minute Order, *Nat'l Treasury Emps. Union v. Vought*, 1:25-cv-00381-ABJ (D.D.C. Feb. 28, 2025) (same); *New York v. McMahon*, 2025 WL 1478387, at *1 (D. Mass. Mar. 21, 2025) (granting leave to file non-party pseudonymous declarations from Department of Education employees); Order, *Does 1-26 v. Musk*, 8:25-cv-00462 (D. Md. Feb. 20, 2025), ECF No. 24 (same).

## ARGUMENT

Each of the Impacted Members faces grave risk of retaliation if Defendants learn their identities. Maintaining their anonymity is necessary to protect them against retribution for their

willingness to speak out against Schedule P/C. At the same time, protecting their identities from the public and the government poses no risk of unfairness to Defendants. The Impacted Members are not parties to this case, and the government has no need to know their identities in order to address the issues before this Court. Accordingly, the balance of the *In re Sealed Case* factors strongly favors allowing the Impacted Members to proceed pseudonymously in this case.

## I. Anonymity is Necessary to Protect the Impacted Members

The Impacted Members are not seeking "merely to avoid the annoyance and criticism that may attend any litigation," but rather are asking "to preserve privacy in a matter of [a] sensitive and highly personal nature." *In re Sealed Case*, 971 F.3d at 326 (quoting *In re Sealed Case*, 931 F.3d at 97). The government's own Motion to Dismiss, Dkt. 42 ("Gov. Mot."), concedes that the very purpose of Schedule P/C is to ensure that formerly protected federal employees "can be removed" at the government's discretion. Gov. Mot. at 1 (citing *Implementing Schedule Policy/Career in the Excepted Service*, Exec. Order No. 14410, § 1, 91 Fed. Reg. 34,893 (June 3, 2026)). Although the government now describes Schedule P/C as narrowly focused on performance, its official statements and actions reveal an intent to target civil servants it views as insufficiently loyal to the Trump administration. Am. Compl. ¶¶ 7-9. The Impacted Members are federal employees willing to oppose the President's policies (as evidenced by their willingness to participate in this lawsuit), which makes them particularly susceptible to removal under Schedule P/C. They therefore have a reasonable fear that disclosure of their identities would expose them to retaliation, including adverse employment actions, up to and including termination.

This Court has previously held that this factor "'weighs heavily in favor of allowing [a declarant] to proceed pseudonymously' when a complaint would identify [the declarant] in a manner that would threaten the [declarant's] future employment opportunities." *Does 1-2*, 763 F. Supp. 3d at 61(citing *Doe v. Lieberman*, 2020 WL 13260569, at *3 (D.D.C. Aug. 5, 2020)); *see also League of Women Voters*, 2025 WL 2897654, at *2 (loss of employment opportunities justifies pseudonymity). Moreover, "[w]here a plaintiff attacks governmental activity, for example a

governmental policy or statute, the plaintiff's interest in proceeding anonymously is considered particularly strong." *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 371 (S.D.N.Y. 2019) (quoting *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003)).

Both are true here, and the Impacted Members are particularly at risk in light of the Trump administration's well-documented pattern of taking adverse employment actions against individuals who, like the Impacted Members, directly criticize or challenge the administration and its policies. *See N. v. HHS*, 2026 WL 571216, at *2 (D.D.C. Mar. 2, 2026) ("Recent retaliatory actions by government officials can establish sufficient risk to warrant pseudonymous proceedings."). The examples are too numerous to list exhaustively, but by way of example: Erez Reuveni, the former Acting Deputy Director of the Department of Justice's ("DOJ") Office of Immigration Litigation, was terminated after speaking truthfully when questioned in court about the circumstances of Kilmar Abrego Garcia's removal from the United States.[3] In June 2025, 144 employees at the Environmental Protection Agency ("EPA") sent a public letter to EPA Administrator Lee Zeldin and members of Congress that was critical of various Trump administration approaches. The agency responded by firing a number of the letter's signatories and placing others on leave.[4] In August 2025, more than 190 current and former Federal Emergency Management Agency ("FEMA") employees published an open letter to Congress known as the Katrina Declaration that warned about policy changes and staff reductions. Immediately following the release, FEMA placed signers on indefinite, paid administrative leave and initiated retaliatory investigations through its Office of Professional Responsibility.[5] The administration has also fired other civil servants perceived to be

[3] *See* Letter from Gov't Accountability Project & Gilbert Emp. L., P.C., Counsel for Erez Reuveni, to Michael E. Horowitz, Inspector Gen., U.S. DOJ et al*., Re: Protected Whistleblower Disclosure of Erez Reuveni* (June 24, 2025), https://www.judiciary.senate.gov/imo/media/doc/06-24-2025_-_Protected_Whistleblower_Disclosure_of_Erez_Reuveni_Redacted.pdf.

[4] *See* Amudalat Ajasa, *Trump Officials Fire EPA Employees for Signing Dissent Letter*, Wash. Post (updated Aug. 29, 2025), https://www.washingtonpost.com/climate-environment/2025/08/29/epa-dissent-letter-employees-fired/.

[5] *See* Nicole Sganga, *FEMA Suspends Employees Who Signed Letter Blasting Trump-Era Changes to Agency, Sources Say,* CBS News (updated Aug. 27, 2025), https://www.cbsnews.com/news/fema-suspensions-letter-katrina-trump-changes-to-agency/.

disloyal, including prosecutors who worked on the Capitol Siege investigations in the U.S. Attorney's Office for the District of Columbia, additional staff who worked on the investigations of President Trump, and Assistant United States Attorneys who were critical of President Trump.[6]

Further, this administration has specifically targeted individuals for retaliation based on those individuals taking adverse litigation positions to this administration or its allies; though the Impacted Members are not *litigants*, they could be perceived as supporting litigation adverse to the administration. *See League of Women Voters*, 2025 WL 2897654, at *2 (holding that "the administration's actions against individuals for 'their involvement in litigation that is perceived as a legal or political threat to this administration'" was sufficient to credit pseudonymous plaintiffs' retaliation fears) (quoting *Does 1-2*, 763 F. Supp. 3d at 61); *see also Perkins Coie LLP v. DOJ*, 783 F. Supp. 3d 105, 118-20 (D.D.C. 2025); *Jenner & Block LLP v. DOJ*, 784 F. Supp. 3d 76, 88 (D.D.C. 2025); *Susman Godfrey LLP v. Exec. Off. of the President*, 789 F. Supp. 3d 15, 28 (D.D.C. 2025); *Wilmer Cutler Pickering Hale and Dorr LLP v. Exec. Off. of the President*, 784 F. Supp. 3d. 127, 135-36 (D.D.C. 2025). The retaliatory actions the administration has taken against perceived opponents, such as barring them from access to federal buildings, rescinding their security clearances, or blacklisting them from future federal employment opportunities, would be particularly harmful to Impacted Members due to their federal employment. *See, e.g.*, *Addressing Risks*

---

[6] *See* Alanna Durkin Richer, *Justice Department Abruptly Fires 3 Prosecutors Involved in Jan. 6 Criminal Cases, AP Sources Say*, AP News (updated June 27, 2025), https://apnews.com/article/jan-6-prosecutions-capitol-riot-trump-bondi-1107441a68cef171dfff4e680e438452; Sarah N. Lynch & Andrew Goudsward, *US Justice Department Fires Several More Employees from Jack Smith's Team, Sources Say*, Reuters (updated July 14, 2025), https://www.reuters.com/world/us/us-justice-fires-nine-more-employees-jack-smiths-team-sources-say-2025-07-12/; Press Release, S. Comm. on the Judiciary, *Durbin Admonishes Attorney General Bondi for Politicized Firing of Nonpartisan Immigration Judges as Trump Administration Carries Out Mass Deportation Scheme* (Aug. 21, 2025), https://www.durbin.senate.gov/newsroom/press-releases/durbin-admonishes-attorney-general-bondi-for-politicized-firing-of-nonpartisan-immigration-judges-as-trump-administration-carries-out-madd-deportation-scheme; Sophia Tareen, *Immigration Judges Fired by Trump Administration Say They Will Fight Back*, AP News (updated July 26, 2025), https://apnews.com/article/court-judge-immigration-fired-trump-chicago-fe049bf3cc8718545879769476391d11; Maggie Haberman & Devlin Barrett, *White House Takes Highly Unusual Step of Directly Firing Line Prosecutors*, N.Y. Times (updated Aug. 5, 2025), https://www.nytimes.com/2025/03/30/us/line-prosecutors-fired-trump-doj.html.

*from Perkins Coie LLP*, Exec. Order No. 14230, 90 Fed. Reg. 11781 (Mar. 6, 2025) (suspending security clearances for employees, restricting employees' access to federal buildings, and ordering the government not to hire attorneys from the organization); *Memorandum on Rescinding Security Clearances and Access to Classified Information from Specified Individuals*, 2025 Daily Comp. Pres. Doc. 388 (Mar. 21, 2025).[7]

Given this pattern of retaliation, the Impacted Members are acutely aware that voicing opinions contrary to the administration puts them at risk of adverse employment actions, including losing their jobs, and the government's insistence on disclosure of their identities only reinforces this understanding. *See* Impacted Member 1 Decl. ¶ 15; Impacted Member 2 Decl. ¶ 12; Impacted Member 3 Decl. ¶ 12; Impacted Member 4 Decl. ¶ 13; Impacted Member 5 Decl. ¶ 15; Impacted Member 6 Decl. ¶ 17; Impacted Member 7 Decl. ¶ 13. The Impacted Members' fear of termination for speaking out against Schedule P/C is therefore not only "a nonspeculative danger that [they] would be subjected to harassment and retaliation should their names be disclosed," but also a danger that Schedule P/C itself makes easier to carry out. *New Mexico*, 824 F. Supp. 3d at 96. The first factor weighs in favor of pseudonymity.

## II. Disclosure of the Impact Members' Identities Would Create a Significant Risk of Psychological Harm

The second factor weighs in favor of anonymity for similar reasons. The risk of retaliation created by the disclosure of the Impacted Members' identities "poses a risk of retaliatory physical

[7] Some of the Impacted Members also fear retaliation in the form of public disparagement by the administration and its allies. The administration has a pattern of spotlighting and disparaging federal employees after they are fired, conduct that can open such employees up to additional doxxing and harassment. For example, after Erez Reuveni was terminated, Stephen Miller publicly called him a "saboteur" on Fox News. *See* Charlotte Hazard, *Top Trump Aide Miller Says DOJ "Saboteur" Said El Salvadoran Migrant Was Deported Accidentally*, Just the News (updated Apr. 14, 2025), https://justthenews.com/government/federal-agencies/trump-adviser-blames-saboteur-doj-saying-el-salvadoran-migrant-was. And after Director of National Intelligence Tulsi Gabbard fired two intelligence officials, her office issued public statements smearing the former employees for providing "politicized intelligence." *See* Dan De Luce, *Gabbard Fires Intel Officials Who Oversaw Memo Contradicting White House Claims on Venezuelan Gang*, NBC News (May 14, 2025), https://www.nbcnews.com/politics/national-security/gabbard-fires-intel-officials-oversaw-memo-contradicting-white-house-c-rcna206918.

or mental harm to the requesting party." *In re Sealed Case,* 971 F.3d at 326 (quoting *In re Sealed Case*, 931 F.3d at 97). Given the Trump administration's targeting of federal employees, this Court has previously found this factor to weigh in favor of plaintiffs who fear retribution "for their involvement in litigation that is perceived as a legal or political threat to this Administration." *Does 1-2*, 763 F. Supp. 3d at 61; *League of Women Voters*, 2025 WL 2897654, at *2. As discussed *supra* Section I, President Trump and his officials have already demonstrated their willingness to retaliate against those who are critical of the administration or its policies. By taking a stance against Schedule P/C, the Impacted Members risk being subject to serious consequences, including loss of current and future employment opportunities, that would create serious psychological harm. This fear goes beyond "mere speculation" and all of the Impacted Members fear such retaliation. *See* Impacted Member 1 Decl. ¶ 15; Impacted Member 2 Decl. ¶ 12; Impacted Member 3 Decl. ¶ 12; Impacted Member 4 Decl. ¶ 13; Impacted Member 5 Decl. ¶ 15; Impacted Member 6 Decl. ¶ 17; Impacted Member 7 Decl. ¶ 13.[8]

## III. This Action is Against the Government, Which Favors Anonymity

That governmental parties are the defendants here also weighs in favor of allowing the Impacted Members to proceed under pseudonym for two reasons. First, "anonymous litigation is more acceptable when the defendant is a governmental body because government defendants 'do not share the concerns about "reputation" that private individuals have when they are publicly charged with wrongdoing.'" *Does 1-2*, 763 F. Supp. 3d at 61-62 (quoting *J.W. v. District of Columbia*, 318 F.R.D. 196, 201 (D.D.C. 2016)).

Second, although this Court must consider the public's interest in open litigation, it must balance this interest against whether "anonymity appears to be necessary to provide [Plaintiffs] the opportunity to vindicate [their] rights." *Id.* at 62 (quoting *Charles H. v. District of Columbia,* 2021 WL 6619327, at *3 (D.D.C. Apr. 9, 2021)). Here, although "there is heightened public interest

[8] The third factor, the "ages of the persons whose privacy interests are sought to be protected," is "of limited relevance to this motion because the [declarants] are not proceeding on behalf of minor children." *Bird v. Barr,* 2019 WL 2870234, at *5 (D.D.C. July 3, 2019).

when an individual or entity files suit against the government," *In re Sealed Case*, 971 F.3d at 329, the high-profile nature of this litigation "cuts both ways, because it also exacerbates the risk of reprisal that the declarants face, which would involve significant and nonspeculative mental and economic harms." *New Mexico*, 824 F. Supp. 3d at 96. The very nature of the action Plaintiffs challenge, the stripping of CSRA protections under Schedule P/C, makes it necessary to provide anonymity to career employees who would provide declarations in support of NARFE's efforts to vindicate its members' rights.

Moreover, as noted, the tradition of public access and open proceedings is implicated to much less a degree when the status of third-party declarants is at issue. *See Puente Ariz. v. Arpaio*, 2016 WL 7743406, at *4 (D. Ariz. Jan. 21, 2016) (noting, in a ruling in favor of non-party Doe declarants, that "the public's interest in an open and fair adjudication is not seriously impaired" when plaintiffs are openly identified and the proceedings would be public).

## IV. There Is No Harm to Defendants if the Impacted Members are Allowed to Proceed Pseudonymously

The final factor also weighs in favor of anonymity because allowing the Impacted Members to proceed under pseudonym presents no risk of unfairness to Defendants. To establish associational standing, an association "must specifically 'identify members who have suffered the requisite harm.'" *Chamber of Com. of U.S. v. EPA,* 642 F.3d 192, 199 (D.C. Cir. 2011) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)). But this "does not mean an association must always identify their injured members by name." *New Mexico*, 824 F. Supp. 3d at 96. Because "general allegations of injury are accepted as true, defendants typically do not need the specific names of plaintiffs' members" to respond to Plaintiffs' standing claims, and "there is no undue prejudice to Defendants from allowing the use of pseudonymized declarations." *Id.*

Here, the Impacted Members are third parties. Permitting them to proceed pseudonymously in no way limits Defendants' access to "the necessary information to defend against [Plaintiff's] claims." *M.A. v. Mayorkas*, 2023 WL 5321924, at *3 (D.D.C. Jul. 6, 2023). As in *Does 1-2*, even if Defendants do not know the Impacted Members' precise identities, they are aware of the larger

group into which the Impacted Members fall—those career civil service employees who have been moved into Schedule P/C. 763 F. Supp. 3d at 62. Moreover, the issues in this case are predominantly legal in nature and do not turn on the Impacted Members' backgrounds or credibility. *See IRAP v. Trump*, 2017 WL 818255, at *3 (D. Md. Mar. 1, 2017) ("[A]ny prejudice to Defendants is limited because the Doe Plaintiffs are challenging the constitutional and statutory validity of a governmental order, such that the questions presented in this case do not depend on identifying the specific parties."). Under such circumstances there is all the more reason to credit the powerful considerations favoring the Impacted Members' anonymity.

**CONCLUSION**

Under the entirety of the circumstances—particularly given the significant power and demonstrated appetite of the Trump administration to retaliate against real and perceived critics—allowing the Impacted Members to proceed under pseudonyms is appropriate and necessary. Revealing the Impacted Members' identities would add nothing to the public's understanding of the issues in this proceeding or to Defendants' ability to make their standing arguments, while subjecting the Impacted Members to the very risks that led Plaintiffs to challenge Schedule P/C. Accordingly, the Court should grant leave to proceed under pseudonym (and for Plaintiffs to rely on the Impacted Members' declarations as attached to this motion in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss).

Dated: October 23, 2026

Respectfully submitted,

By: */s/ Corey Stoughton*

SELENDY GAY PLLC
Andrew R. Dunlap*
Corey Stoughton (D.C. Bar No. 472867)
Drake Reed*
1290 Avenue of the Americas
New York, NY 10104
Tel: (212) 390-9000
adunlap@selendygay.com
cstoughton@selendygay.com
dreed@selendygay.com

PROTECT DEMOCRACY PROJECT
Ori Lev (D.C. Bar No. 452565)
Julia L. Torti*
Protect Democracy Project
2020 Pennsylvania Ave. NW, Suite #163
Washington, D.C. 20006
Tel: (202) 579-4582
Fax: (202) 769-3176
ori.lev@protectdemocracy.org
jules.torti@protectdemocracy.org

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*