# Exhibit 3

## DECLARATION OF EREZ REUVENI

I, Erez Reuveni, affirm:

1. I make this statement based on personal knowledge, information, and belief, and if called as a witness could testify competently thereto.

2. I have spent most of my professional life as a career civil servant and worked for almost fifteen years at the Department of Justice (DOJ). I began my career in federal service at the Office of Immigration Litigation (OIL), District Court Section in 2010 and was promoted multiple times under both Republican and Democratic administrations. During my time at DOJ, I received consistent "excellent" ratings from my superiors and was the recipient of nine Civil Division awards.

3. Most recently, I served as the Acting Deputy Director for OIL where I was responsible for supervising all of OIL's immigration litigation arising in U.S. district courts nationwide. In this role, I supervised over one hundred attorneys handling hundreds of cases. I also oversaw the federal government's defense of many significant legal challenges to multiple Executive Orders signed by President Trump and defended multiple immigration policy initiatives on behalf of the Departments of Homeland Security, State, Defense, Labor and Health and Human Services.

4. In March 2025, I became aware of plans of DOJ leadership to resist court orders that would impede potentially illegal efforts to deport noncitizens and further became aware of the details to execute those plans.

5. On April 4, 2025, after raising concerns internally to my chain of command for nearly three weeks regarding the government's compliance with court orders and candor to the courts, I appeared before Judge Paula Xinis, United States District Court Judge for the District of Maryland, on behalf of the government in the case of Mr. Kilmar Abrego Garcia. During that appearance, I candidly and truthfully informed the court, based on the evidentiary record and sworn affidavit of the government declarant, that Mr. Abrego Garcia's removal from the United States was a mistake. Later that evening, I refused to sign or file a brief misrepresenting those facts at the direction of my superiors and was put on administrative leave on April 5, 2025. I was subsequently terminated on April 11, 2025.

6. Prior to being placed on administrative leave, I had only a general awareness of whistleblower laws and did not have a specific understanding of what disclosures were covered. I raised my concerns with my superiors at DOJ because of my ethical obligations as an attorney but had not considered making additional whistleblower disclosures to oversight entities.

7. When I was placed on administrative leave, I reached out to the Government Accountability Project (GAP). After completing an intake with GAP, I had a much better understanding of my rights as a whistleblower and how to make a lawful disclosure about the actions I had observed at DOJ without risking my safety or violating my ethical

obligations as an attorney. The rights on which GAP advised me would not have applied had my position been moved to Schedule P/C.

8. As a result of GAP's guidance and advice, I decided to move forward in making protected whistleblower disclosures to oversight entities. GAP and I worked together over several weeks to compile a written whistleblower disclosure that both identified me and my role and detailed the reportable conduct I had witnessed at DOJ. The whistleblower protections that are afforded to me by law as a career civil service employee enabled me to make a disclosure consistent with my ethical obligations as an attorney and the Rules of Professional Conduct.

9. In June 2025, through my counsel at GAP I submitted my disclosure to the Inspector General at the DOJ, the U.S. Senate Committee on the Judiciary, the U.S. House Committee on the Judiciary, and the Office of the Special Counsel.

10. My whistleblower rights and GAP's advice on how to exercise those rights were essential to my decision to speak out and to provide the level of detail contained in my disclosure.

11. I am aware of the recent regulation creating a new excepted service category for career civil servants called Schedule Policy/Career (Schedule P/C) and Executive Order 14410 that implemented Schedule P/C. I understand that positions reclassified to Schedule P/C lose their employment protections under the Civil Service Reform Act (CSRA), including whistleblower protections under the CSRA.

12. Had these whistleblower protections not been available to me on April 5, 2025, including as a result of my position being moved to Schedule P/C prior to that date, it is likely that I would not have made a disclosure.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 10/21, 2026.

EREZ REUVENI